UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JEREMIAH McCALL (#365-557)** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 12-CV-02915 RDB |
| ) | |
| **WARDEN**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMMENT**

Defendants Bobby Shearin, Dale Smith, Robert Cross, Randolph Keefer, Adam Logsdon, Benjamin Friend, and Mark Emerick, by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment.

**PLAINTIFF'S CLAIMS**

Plaintiff, an inmate currently incarcerated at North Branch Correctional Institution ("NBCI"), has filed this action under 42 U.S.C. § 1983 alleging that he was subjected to cruel and unusual punishment when Defendants severely beat him during a cell extraction on July 14, 2012. ECF Document No. 1, 3. Specifically, Plaintiff claims that when the extraction began, Defendant Benjamin Friend intentionally knocked him to the floor "with extreme force" and told him that he was "going to die." ECF Document No. 3-1 at p. 3. Plaintiff further claims that "seconds later," he was "severely beaten by 3-4 correctional officers," that he received "all sorts of punches [and] kicks," and that his face was "slammed against the floor repeatedly." *Id*. Plaintiff states that he was then escorted from the housing tier to have his picture taken, and that

1

during the escort, he was "severely choked." *Id*. Plaintiff claims that he was then seen by a nurse who only took his heart rate and stated "he's fine." *Id.* at p. 4. Plaintiff also claims that he was choked, punched and verbally threated in the presence of this nurse. *Id*. Plaintiff states that he was then taken to the back of Housing Unit #1 and beaten by Defendant Randolph Keefer while Officer Mackral and Defendant Friend held him down. *Id*. Plaintiff claims that he was then "severely choked" while being escorted to the shower and that during the shower, he was further beaten and his face "rammed up against the wall." *Id*. Plaintiff claims that he was then taken to disciplinary confinement and "no further abuse physically took place." *Id*. at p. 5.

## FACTUAL BACKGROUND

On July 14, 2012, at approximately 11:30 p.m., Defendant Dale Smith assembled a Planned Use of Force Team because Plaintiff and his cellmate (Lamont Jackson #351-249) had breach their security slot, barricaded the slot with a mattress, and tied a jumpsuit and bed sheet to the outside handle of their cell door. Exhibit 1: Declaration of Randy Durst, with attachments, at p. 2, 8, 9. The Use of Force Team consisted of the following correctional officers: Defendant Benjamin Friend, Justin Gordon, Defendant Randolph Keefer, Michael Price, Adam Logsdon, Earl Ritchie, Joshua Kennell, Paul Penrod, and Michael Buchholtz. *Id*. Officer Buchholtz used a hand held video recorder to document the extraction. *Id.* at p. 3. *See also* Exhibit 2: DVD Containing Videotape of July 14, 2012 Cell Extraction. Once the team arrived at Plaintiff's cell door, Defendant Smith attempted confrontation avoidance techniques in an effort to get Plaintiff and his cellmate handcuffed. Exhibit 1 at p. 2, 9. Both inmates refused Defendant Smith's repeated orders to comply. *Id*. See also Exhibit 2. In response, Lt. Cross removed the jumpsuit and bed sheet from the cell door, and Officers Kennell and Penrod used an X-10 extension device to open the security slot and deploy a burst of pepper spray. *Id*. After Plaintiff again

refused an order to come to the door and be handcuffed, the Use of Force team entered the cell. *Id*. Upon entering, the officers noticed that the lighting in the cell was poor because Plaintiff and/or his cellmate had covered the overhead light. *Id*. Defendant Keefer took control of Plaintiff's right arm, and Sgt. Gordon took control of Plaintiff's left arm and applied handcuffs. Exhibit 1 at p. 2, 8, 9. Sgt. Gordon and Defendant Friend then stood Plaintiff up and escorted him to be evaluated by Autumn Durst, R.N., in the 1-E-105 medical room. Exhibit 1 at p. 2, 8, 9. *See also* Exhibit 2. Upon examination, the nurse noted that Plaintiff's gait was steady, his speech was clear and he had no signs of respiratory distress. *See* Exhibit 1 at p. 24. She also noted that she did not observe any injuries, nor did Plaintiff complain of any injuries. *Id*.

Following this examination, Plaintiff was escorted by Sgt. Gordon and Defendants Friend and Keefer to the strip search cage located in the staff corridor of Housing Unit #1. Exhibit 1 at p. 2, 8, 9. *See also* Exhibit 2. After the search was completed, Plaintiff was escorted to the 1-C-137 shower for decontamination. *Id*. To avoid any further incident, Plaintiff was given a hands-on shower by Sgt. Gordon and Defendants Friend and Keefer. Exhibit 1 at p. 12. Following the shower, Plaintiff was escorted by the same correctional staff to temporary housing cell 1-C-3. Exhibit 1 at p. 2, 8, 9. *See also* Exhibit 2. Plaintiff's handcuffs were removed and he was placed in the cell without further incident. *Id*.

On July 17, 2012, Plaintiff was issued a Notice of Inmate Rule Violation charging him with violating Rules 116, 312, 400, 402, and 405[1] in connection with the July 14, 2012 cell

---

[1] Rule 116: Possess, misuse, tamper with, damage, or destroy security equipment or property, detection equipment, or fire suppression equipment or alarm. Rule 312: Interfere with or resist the performance of staff duties to include a search of a person, item, area or location. Rule 400: disobey an order. Rule 402: being in a location without authorization; leave an assigned location without authorization; be absent from or late reporting to an assigned location without authorization; loiter or linger in a location without authorization; or refuse or fail to obey or

extraction. Exhibit 1 at p. 26-28. He was then placed on administrative segregation pending a formal hearing on the charges. *Id*. at p. 26. Plaintiff refused to give investigating officers any statement regarding what happened on July 14, 2012. *Id.* at p. 10.

On July 19, 2012, Plaintiff filed a Request for Administrative Remedy ("ARP") claiming that, during the cell extraction on July 14, 2012, he was "severely beaten" by correctional officers. ECF Document No. 3-1 at p. 1-8. On July 23, 2012, Plaintiff's ARP was dismissed, pursuant to DCD 185-003.VI.N.4, because the matter had been referred to the Maryland Department of Public Safety and Correctional Services ("DPSCS") Internal Investigation Unit ("IIU") for investigation. *Id*. at p. 1.

On August 2, 2012, the formal hearing was held on Plaintiff's alleged rule violations. Exhibit 1 at p. 29-34. Plaintiff refused to attend or otherwise participate in the hearing. *Id.* at p. 30, 34. He was found guilty of the infractions set forth in the violation notice, and the guilty finding was affirmed by NBCI's Warden on August 30, 2012. *Id.* at p. 35, 36.

## STANDARD OF REVIEW

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *See Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997). Although such a complaint "does not need detailed factual allegations [citations omitted], a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007). While *pro se* pleadings must be "liberally construed" and are "held to less stringent standards than

---

follow an order or a rule, procedure, or policy for inmate facility movement or inmate travel outside of a facility. 405: demonstrate disrespect or use vulgar language.

those drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), such pleadings must nonetheless comport with the requirement that a complaint be supported by something "more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008), quoting *Twombly,*, 127 S.Ct. at 1965. Under this standard, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1965.

A claim will lack "facial plausibility" unless the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine "whether a complaint states a plausible claim for relief," a court engages in a "context-specific task . . . draw[ing] on its judicial experience and common sense." *Id. at* 679. If the well-pleaded facts "do no permit the court to infer more than the *mere possibility* of misconduct," the complaint fails to state a claim and must be dismissed. *Id*. (emphasis added).

In the alternative, summary judgment is appropriate where there exists no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett* 477 U.S. 317, 322 (1986). In determining whether a party is entitled to judgment under this rule, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The mere presence of a factual dispute, however, will not preclude the court from granting judgment to the moving party. As the Supreme Court has held:

> By its very terms, this standard provides that the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Liberty Lobby, Inc.*, 477 U.S. at 247-48.

Accordingly, once the moving party has established the absence of any genuine issue of material fact, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute as to a material fact exists. *See id.* A mere "scintilla" of evidence, however, "is not enough to create a fact issue." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249-50 (citations omitted). In light of this standard, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Catrett*, 477 U.S. at 323-24.

## ARGUMENT

### I. DEFENDANT SHEARIN SHOULD BE DISMISSED AS HE IS NOT A PROPER PARTY

On October 1, 2012, the above-captioned case was opened upon receipt of a letter from Plaintiff alleging that he had been severely beaten at North Branch Correctional Institution ("NBCI") during a cell extraction. ECF Document No. 1. Plaintiff's letter did not identify any defendants. *Id*. On October 3, 2012, this Court issued an order directing Plaintiff to file a supplemental pleading that identified with specificity, *inter alia*, the names of the individuals whom he claimed were responsible for the alleged assault. ECF Document No. 2. In its order,

the Court identified "Warden" as the defendant in the caption of the case. *Id.* On October 22, 2012, Plaintiff filed a supplemental pleading. ECF Document No. 3. In this pleading, Plaintiff did not name Warden Bobby Shearin as a defendant, nor is Warden Shearin otherwise mentioned in the complaint. Accordingly, Warden Shearin is not a proper party to the instant action and should be dismissed.

To the extent that this Court finds that Warden Shearin is a proper party to this action, the claims against him should nonetheless be dismissed because Plaintiff has failed to allege any facts that would support a finding of liability. "[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *See Dove v. Fordham Univ.*, 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999), quoting *Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y. 1981) *Zavatsky v. Anderson*, 130 F.Supp.2d 349, 358 (D.Conn. 2001)(complaint naming two defendants only in the caption was dismissed as to those two defendants.) "Further, even a pro se plaintiff has the burden of alleging sufficient facts upon which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)." *Allison v. Utah County Corp.*, 223 F.R.D. 638, 639 (D. Utah 2004).

As discussed above, Warden Shearin's name is only found in the caption of the Complaint. *See* ECF Document No. 1 at p. 6. Otherwise, the Complaint is completely devoid of any specific factual allegations against Warden Shearin, and it fails to assert any theory of liability under which he could be found responsible for Plaintiff's alleged damages.

Mr. Shearin is the Warden of NBCI. He had no personal involvement in the matter of which Plaintiff complains. Absent personal involvement, the only theory of liability that could

be asserted against Warden Shearin is *respondeat superior*. Even if Plaintiff's Complaint could be read to sue Warden Shearin under that theory, however, it is nonetheless subject to dismissal. There is no *respondeat superior* liability for a cause of action brought under §1983. *Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978). Instead, to establish liability in a § 1983 action in general, the Fourth Circuit has held that it must be shown:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See Shaw*, 13 F.3d at 799.

Therefore, supervisory correctional officials can be held liable only for their own personal wrongdoing or for supervisory actions that themselves violate constitutional norms. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994)(citations omitted). *See also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1997); *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Plaintiff has failed to allege that Warden Shearin was personally involved in the matter of which he complains or that any of Warden Shearin's supervisory actions caused his alleged injuries. Accordingly, Plaintiff's Complaint against Warden Shearin should be dismissed.

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANTS LOGSDON, EMERICK AND CROSS

Plaintiff's claims against Defendants Logsdon, Emerick and Cross should also be dismissed because, again, Plaintiff has failed to allege any facts that would support a finding of liability. *See supra* p. 6-7. Plaintiff identifies both Logsdon and Emerick as Defendants in this case, but he otherwise fails to explain how, or if, they were involved in the alleged assault of

which he complains. ECF Document No. 3. Moreover, the only mention of Defendant Cross in Plaintiff's Complaint (other than the caption) is Plaintiff's statement that he was not even sure if Defendant Cross was present during the alleged assault. ECF Document No. 3 at p. 5. As such, the claims against Defendants Logsdon, Emerick, and Cross should be dismissed.

**III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S EXCESSIVE USE OF FORCE CLAIM**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." *See U.S. Const. Amend. VIII*. It not only protects inmates from excessive sentences but also protects them from inhumane treatment and conditions while imprisoned. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). A claim that prison officials used excessive force on an inmate, and thereby inflicted cruel and unusual punishment in violation of the Eighth Amendment, involves an analysis of both subjective and objective components. *Stanley v. Hejirika*, 134 F.2d 629, 634 (4th Cir. 1998). The objective component requires a determination of whether the defendants' actions offend contemporary standards of decency. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires a determination of "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

The decision to use force against an inmate to restore order is "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *See Whitley v. Albers*, 475 U.S. 312, 320 (1986). Because correctional officers "must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates suffer" from a use of force designed to restore order, when a correctional officers uses force only in "a good-faith effort to maintain or restore discipline," there is no constitutional violation. *See Hudson*, 503 U.S. 1, 6-7.

9

To determine whether a particular use of force was "a good-faith effort to maintain or restore discipline" or was undertaken "maliciously and sadistically to cause harm," courts evaluate: 1) the seriousness of any injury suffered by the inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. *See Whitley*, 475 U.S. at 7 (internal quotations and citations omitted.)

A review of the videotape that documents the July 14, 2012 cell extraction and Plaintiff's subsequent escort to the medical unit, shower and temporary housing cell, prove conclusively that the physical contact used by the Defendants was minimal and applied in a good faith effort to restore and maintain discipline. *See* Exhibit 2. Likewise, Plaintiff's medical records do not support his claim that Defendant's used excessive force. Exhibit 3: Plaintiff's Medical Records. In fact, there is absolutely no indication anywhere in the record that any force was applied to Plaintiff with malicious and sadistic intent to cause him harm. His bald assertions that he was severely "beaten" and "choked" are simply not probative and no jury could return a verdict in Plaintiff's favor. Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

## IV.   Defendants Are Entitled to Qualified Immunity

Even if this Court were to find that Defendants violated Plaintiff's constitutional rights by using excessive force, they are entitled to summary judgment on the basis of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (alteration in original). The qualified immunity inquiry is "assessed in

light of the legal rules that were 'clearly established at the time the action was taken.'" *Id.* Plaintiff must show more than that the right violated was clearly established in a general sense, but must "demonstrate that the particular actions" at issue "were unlawful under the law established at the time of the incident." *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998) (citations omitted); see *also Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (Powell, J.) ("[T]he proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."). In other words, to be denied the protection of qualified immunity, a public official must "appreciate that he was violating" a plaintiff's asserted rights when he takes the action in question. *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007). Moreover, because the main purpose underlying the qualified immunity doctrine is to prevent "insubstantial claims" against government officials from proceeding to discovery, the question of immunity should be decided at "the earliest possible stage of litigation. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citations omitted).

Reasonable officials in the Defendants' position could not have "appreciated that [they] were] violating" Plaintiff's constitutional rights when they performed a planned cell extraction in response to Plaintiff's repeated refusals to comply with direct orders to remove the contraband from his cell door and be handcuffed. *See Johnson*, 475 F.3d at 650. Accordingly, summary judgment should be granted in Defendants favor now, at the earliest possible stage in litigation.

**CONCLUSION**

For all of the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety, with prejudice and without leave to amend, or in the alternative, enter summary judgment in Defendants' favor.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland


/s/
SIOBHAN K. MADISON
Assistant Attorney General
Federal Bar No. 28701

Saint Paul Plaza – 19th Floor
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6587 (Telephone)
(410) 576-6880 (Fax)
E-mail:  smadison@oag.state.md.us

*Attorneys for Defendants*