# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JEREMIAH McCALL        *

Plaintiff        *

v        *        Civil Action No. RDB-12-2915

WARDEN, *et al.*        *

Defendants        *

       ***

## **MEMORANDUM OPINION**

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 21. Plaintiff was advised of his right to oppose the motion, and of the consequences of failing to do so (ECF No. 22), but has failed to file anything further. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be GRANTED.

## **Background**

Plaintiff Jeremiah McCall ("McCall"), a self-represented prisoner incarcerated at North Branch Correctional Institution (NBCI), alleges he was severely beaten by Defendants, who are correctional officers, when he was forcibly extracted from his cell. ECF No. 1 and 3. McCall states that on July 14, 2012, at approximately 6:00 p.m., Officer Goodrich was making rounds on the housing unit where McCall was assigned, passing out ice to inmates. Goodrich passed out ice to the whole top tier, but as he walked past McCall's cell stated he was not getting ice. ECF No. 3 at Attachment 1 (hereinafter ECF No. 3-1) at p. 2. In response to Goodrich's refusal to provide McCall with ice, McCall states he held the slot in his cell door open in order to receive an explanation. McCall claims Goodrich simply stated he wasn't getting ice because he said

McCall was not getting it. *Id*. McCall then alleges the lack of an explanation "unfortunately . . . lead (sic) to a cell extraction." *Id*.

McCall states the cell extraction took place later the same day between 11:00 p.m. and 12:15 a.m. "due to a security breach." ECF No. 3-1 at p. 3. McCall states he had positioned himself near the back of the cell, near the window, in order to avoid the effects of the mace sprayed in the cell. He claims Officer Friend entered the cell first holding a shield and proceeded to knock McCall to the floor, stating he was going to die. *Id*. McCall states that "seconds later" he was being severely beaten by three to four officers who delivered punches and kicks to his face and slammed McCall on the floor. *Id*. After he was handcuffed behind his back, McCall states he was escorted off the tier while being "severely choked." *Id*.

McCall was taken to the middle of the housing unit to have pictures taken by Lt. Smith and to be examined by a nurse. *Id*. at p. 4. McCall claims the nurse only took his heart rate and "seconds later" stated that McCall was fine. *Id*. While in the presence of the nurse, McCall alleges he was being choked and punched and threatened that he was "going to die." *Id*.

McCall was then escorted to the back of the property room for the housing unit, where his cellmate Lamont Jackson was being strip-searched. In the presence of Jackson, McCall claims Officers Mackral and Friend held each of his arms while Officer Keefe struck him two to three times with his knee against the left side of his face. McCall alleges Keefe made statements while hitting him such as, "who's your Daddy" and "I bet you like the way this feel[s] don't you." ECF No. 3-1 at p. 4. Upon completing Jackson's strip search, McCall was strip searched and given only his boxers to wear. McCall was then handcuffed behind his back again and escorted to the showers. *Id*.

During the escort to the showers, McCall alleges he was again being "severely choked," causing him to faint from lack of oxygen. ECF No. 3-1 at p. 5. McCall claims either Lt. Smith or Lt. Cross ordered for the shower to be "hands on" meaning no water was used; rather, McCall was simply beaten about the body and the face and rammed up against the wall. *Id*. McCall states he was escorted from the shower and again choked "from time to time" until he was placed in a disciplinary confinement cell and released from his handcuffs. *Id*.

Upon entering the cell McCall claims he went to the sink to wash the mace off of his face and body. He states he was confined in the cell with no mattress, no clothes, and no hygiene items from July 14, 2012 through July 17, 2012. He claims the only item of clothing he was allowed, a pair of boxers, were covered in mace. Additionally, McCall claims he was refused access to all mail. As relief, McCall seeks monetary damages as well as institution of criminal charges against Defendants.[1]

Defendants assert that the cell extraction was prompted by McCall and his cellmate, Lamont Jackson, barricading their cell. ECF No. 21 at Ex. 1, pp. 2, 8 and 9. McCall and Jackson had breached the security slot, barricaded the slot with a mattress, and tied a jumpsuit and bed sheet to the outside handle of their cell door. *Id*. Attempts were made to gain McCall and Jackson's compliance with being restrained, however, both men refused. Lt. Cross removed the jumpsuit and bed sheet from the cell door; Officers Kennell and Penrod used an extension device to open the security slot and deployed a burst of pepper spray. *Id*. McCall was again ordered to submit to handcuffing and again refused to comply; therefore, the Use of Force team

---

[1] McCall's request for institution of criminal charges must be denied as he does not have a constitutional right to insist on a criminal prosecution. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (citizens lack standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir.1988) (no right to force state to prosecute others under equal protection clause).

entered the cell. *Id*. Officer Keefer took control of McCall's right arm while Sgt. Gordon took control of his left arm and applied handcuffs. Gordon and Officer Friend stood McCall up and escorted him to the medical room for evaluation following exposure to a chemical agent. *Id*. McCall's gait was noted as steady, speech was clear, and no signs of respiratory distress or injury were noted, nor were they voiced by McCall. *Id*. at p. 24.

On July 17, 2012, McCall was issued a Notice of Infraction charging him with violating Rules 116 (possess, misuse, tamper with, damage or destroy security equipment . . . fire suppression equipment or alarm), 312 (interfere with or resist the performance of staff duties to include a search of a person, item, area or location), 400 (disobey an order), 402 (being in a location without authorization), and 405 (demonstrate disrespect or use vulgar language). ECF No. 21 at Ex. 1, pp. 26 – 28. McCall was put on administrative segregation pending a formal hearing on the charges and refused to provide investigating officers with a statement concerning the events of July 14, 2012. *Id*. at p. 10.

On July 19, 2012, McCall filed an administrative remedy (ARP) claiming he was severely beaten during the July 14, 2012 cell extraction which was dismissed on July 23, 2012, due to a pending investigation. Under Division of Correction Directive 185-003.VI.N.4, when a matter is referred to the Maryland Department of Public Safety and Correctional Services Internal Investigation Unit for investigation, an ARP concerning the same events is subject to dismissal. A formal disciplinary hearing was held regarding the Notice of Infraction issued to McCall on August 2, 2012. ECF 21 at Ex. 1, pp. 29 – 34. McCall refused to attend the hearing or otherwise participate and he was found guilty. *Id*. at pp. 30 and 34. The Warden at NBCI affirmed the guilty finding on August 30, 2012. *Id*. at pp. 35 and 36.

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

**Analysis**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 – 7 (1992). This Court must look at the need for application of force, the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

The undisputed record evidence[2] establishes that McCall and his cell mate had barricaded the door of their cell and when asked what the problem was, McCall responded with vulgarity. ECF No. 21 at Ex. 1, pp. 2, 26, and 30. When provided with subsequent opportunities to comply with orders to be restrained, McCall remained recalcitrant and taunted officers to "do what you have to do" after being warned that force would be used if he did not comply with orders. *Id* at p. 2. The extraction team removed the barricade, applied pepper spray, and again asked for compliance with orders, but neither prisoner complied. *Id*. at Ex. 1, pp. 2 – 3. The officers then forced McCall to the floor using a shield and restrained him while he offered physical resistance. *Id*. McCall was then seen by a nurse who observed no physical injuries and noted no respiratory

---

[2] Because there is no evidence that the video recording of the cell extraction was made available to McCall for viewing prior to its introduction as an exhibit in this case, it has not been reviewed or considered by this Court in the context of this opinion. *See* ECF No. 21 at Ex. 2.

distress resulting from the pepper spray. *Id.* at Ex. 3. After McCall was strip searched, he was given a shower. *Id.* at Ex. 2.

The record establishes there was a need for force to restore discipline and only that force which was necessary was utilized, resulting in no injury to McCall. Thus, there is no evidence of an Eighth Amendment violation and Defendants are entitled to summary judgment in their favor. A separate Order granting Defendants' Motion for Summary Judgment and entering judgment in their favor in accordance with this Memorandum Opinion follows.

July 2, 2013 _____/s/_____
Date                                                           RICHARD D. BENNETT
                                                      UNITED STATES DISTRICT JUDGE